| JUNTA DE PLANIFICACIÓN, ADMINISTRACIÓN SABANERA DEL RÍO<br><br>Recurrente<br><br>v.<br><br>JOSÉ RAMÓN TORRES PEÑA, MIGDALIA MARRERO<br>Recurrida | KLRA202500203 | *Revisión Judicial* procedente de la Junta de Planificación de Puerto Rico<br><br>Núm. de Querella: 2023-SRQ-300199 |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de septiembre de 2025.

Comparece la Asociación de Residentes de Sabanera del Río, Inc. (Asociación o parte recurrente), mediante recurso de revisión judicial, solicitando la revocación de la *Resolución de Archivo* emitida y notificada por la Junta de Planificación (JP) el 30 de enero de 2025. En esta, la JP ordenó el archivo de la querella 2023-SRQ-300199 instada por la parte recurrente, tras haberse declarado sin jurisdicción por ser el foro judicial el llamado a atender controversias sobre los límites de las propiedades.

## I. Resumen del tracto procesal

El asunto ante nosotros es secuela de una intervención previa en el caso identificado con el alfanumérico KLRA202500035, dirimido mediante *Sentencia* del 20 de febrero de 2025. Según expusimos en el recuento procesal del referido dictamen, el 24 de octubre de 2024 la JP emitió una *Notificación de Hallazgo(s) y Orden de Mostrar Causa* (*Resolución*) contra el Sr. José Ramón Torres Peña y la Sra. Migdalia Marrero (parte recurrida). En el referido escrito, la agencia manifestó que la parte querellada o intervenida era dueño,

oficial, agente, etc., de la propiedad objeto de la querella ubicada en la Urb. Sabanera del Rio 118, Camino de las Bromelias, Gurabo, PR, 00762 identificada con el número de catastro 226-091-440-45. Continuó indicando que el 14 de diciembre de 2023 se presentó una querella, a la cual se le asignó el número 2023-SRQ-300199, donde se alegó lo siguiente:

1. El titular construyó en terreno ajeno perteneciente a la Asociación de Residentes de Sabanera del Río en Gurabo, PR.

2. El permiso concedido, si alguno, no permite construcciones en terreno ajeno.

Entonces, luego de conducida la investigación pertinente, la JP determinó que la parte recurrida infringió las siguientes disposiciones: Art. 9.12 de la Ley Núm. 161-2009, *supra*, y las Reglas 1.6.7 y 3.2.1 sec. 3.2.1.1 del Reglamento Conjunto 2023, Reglamento Núm. 9473 del 16 de junio de 2023. Particularmente, encontró que había construido un jacuzzi de dos (2) a tres (3) pies sin el permiso correspondiente. Por consiguiente, la agencia administrativa le concedió a dicha parte un término de veinte (20) días para que mostrara causa por la cual no se le debían imponer sanciones.

Expirado el término aludido, la parte recurrida presentó una *Moción de Reconsideración* el 3 de diciembre de 2024, en la cual arguyó que ostentaba el "título propietario del lugar donde enclava la construcción objeto de la querella, el cual ha pose[í]do a título de dueño, de forma pública, pacífica, continua e in[in]terrumpida por un periodo de m[á]s de 20 años". Añadió que la Asociación carecía de legitimación activa para incoar la acción en su contra.

Subsiguientemente, el 30 de diciembre de 2024, la JP emitió una *Resolución* donde manifestó que el 20 de noviembre de 2024 había recibido una comunicación de parte del señor Torres Peña, donde este le indicó que se encontraba tramitando los permisos para poder legalizar la construcción.[1] Por consiguiente, la JP le concedió un término de treinta (30) días para

---

[1] Esta comunicación no forma parte del expediente ante nos.

presentar evidencia de los trámites presentados o el permiso de construcción correspondiente.

Aun sin haber agotado el trámite descrito en el párrafo que precede, el 16 de enero de 2025, el señor Torres Peña presentó un *recurso de revisión judicial* ante este Tribunal de Apelaciones.

Sin embargo, estando pendiente la dilucidación del referido recurso ante nosotros, el 30 de enero de 2025, la JP emitió una *Resolución de Archivo* de la querella presentada, en la cual enumeró las siguientes determinaciones de hechos:

> 1. El pasado 14 de diciembre de 2023, se presentó una solicitud de querella en el *Single Business Portal* ("SBP"), a la cual se le asignó el número **2023-SRQ-300199**, alegando lo siguiente: 1. El titular construyó en terreno ajeno perteneciente a la Asociación de Residentes de Sabanera del Rio. 2. El permiso concedido, si alguno, no permite construcciones en terreno ajeno.
> 2. La autoridad de la Junta de Planificación está limitada a las facultades que las disposiciones de ley le otorgan.
> 3. Luego de haber examinado los alegatos en la querella 2023-SRQ-300199, no se encontró evidencia que este organismo tenga jurisdicción sobre ese asunto.
> 4. La Junta de Planificación no puede proveer el remedio solicitado por el querellante porque este no imputa violación de leyes ni reglamentos, ni ausencia, ni incumplimiento con las condiciones de un permiso bajo nuestra competencia, resultando en una acción *ultra vires*.

En vista de lo anterior, la JP concluyó que no tenía jurisdicción para atender el asunto de las colindancias, careciendo de autoridad para dirimir conflictos relacionados con los límites de las propiedades.

En desacuerdo, la parte recurrente presentó una *Moción Asumiendo Representación Legal y Solicitando Reconsideración,* aduciendo que la *Resolución de Archivo* aludida fue emitida por la JP en ausencia de jurisdicción.

A raíz de lo planteado por las partes, y luego de estudiar el asunto, determinamos desestimar el recurso KLRA202500035, por falta de jurisdicción al ser prematuro, pues concluimos que la referida *Resolución en Archivo* del 30 de enero de 2025 era la última determinación de la agencia

revisable mediante recurso de revisión judicial por la parte adversamente afectada.

En correspondencia con nuestra determinación sobre el recurso prematuro, el 4 de abril de 2025, la Asociación acudió nuevamente ante nosotros, esta vez de forma oportuna, mediante el recurso de revisión judicial que no ocupa, planteando los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE PLANIFICACIÓN AL RESOLVER EL ARCHIVO DE LA QUERELLA FUNDAMENTADO EN ALEGACIONES TRAIDAS EN ETAPA DE RECONSIDERACIÓN, POR SER ARBITRARIO, CAPRICHOSO E IRRAZONABLE.
>
> SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE PLANIFICACIÓN AL RESOLVER EL ARCHIVO DE LA QUERELLA FUNDAMENTADO EN LAS ANTERIORES ALEGACIONES NUEVAS PRESENTADAS EN LA ETAPA DE RECONSIDERACIÓN, QUE CONTRADICEN SUS PROPIAS ADMISIONES A LA AGENCIA, Y SIN PERMITIR CONFRONTACIÓN DE ESTA PARTE A ESAS ALEGACIONES POST RESOLUCIÓN; EN VIOLACIÓN CRASA AL DEBIDO PROCESO DE LEY.
>
> TERCER SEÑALAMIENTO DE ERROR: ERRÓ LA JUNTA DE PLANIFICACIÓN RESOLVER EL ARCHIVO DE LA QUERELLA POR FALTA DE JURISDICCIÓN CUANDO, POR LA NATURALEZA *IN REM* DE LOS PERMISOS, AUSCULTAR LA EXISTENCIA O NO DE UN PERMISO PARA LA FINCA DONDE UBICA LA CONSTRUCCIÓN ALEGADA ILEGAL SÍ ES DE SU JURISDICCIÓN.

En respuesta, la parte recurrida presentó una *Moción de Desestimación,* aduciendo que el recurso de revisión judicial se había presentado fuera del término jurisdiccional de treinta (30) días, contados a partir de la fecha del archivo en autos de la copia de la *Resolución de Archivo.* Particularmente, arguyó que la *Moción de Reconsideración* presentada el 19 de febrero de 2025 no interrumpió el término para acudir ante este foro revisor.

Ante ello, le concedimos a la parte recurrente un término de cinco (5) días para que presentara su posición, lo cual cumplió a través de una *Moción en Cumplimiento de Orden; en Oposición a Moción de Desestimación de Recurrida.*

A su vez, la JP presentó *Moción en Oposición a Recurso de Revisión Administrativa y Solicitud de Desestimación.*

Mediante *Resolución* de 8 de mayo de 2025 declaramos *No Ha Lugar* la *Moción de Desestimación* instada por la JP, concediéndole un término para que se expresara en torno a los méritos del recurso de revisión judicial.

En efecto, la JP instó *Alegato en Oposición a Recurso de Revisión Administrativa al Amparo de la Regla 63.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II. Exposición de derecho

a.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone sobre el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999).

Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019). Por lo tanto, los tribunales deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE*, 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell*, 131 DPR 275, 289-290 (1992).

Es por las razones expuestas que las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez v. ARPE*, 167 DPR 684, 693 (2006). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. PR v. JP*, 146 DPR 64, 131 (1998).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors, Motors*, 161 DPR 69, 76 (2004). Conforme a lo cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo: y (3) si las conclusiones de derecho del ente administrativo fueron correctas, ello mediante una revisión completa y absoluta. *Torres Rivera v. Policia de PR*, 196 DPR 606, 626-627 (2016); *Véase*, también Sec. 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

Por otra parte, nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar tal deferencia a las determinaciones administrativas. En específico, dicho alto foro ha reconocido que la deferencia cederá cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *Acarón, et al v. DRNA,* 186 DPR 564, 584 (2012); *Marina Costa Azul v. Comisión*, 170 DPR 847, 852 (2007). Evidencia sustancial se define como "aquella evidencia

relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Misión Ind. PR v. JP*, supra. Por consiguiente, para convencer al foro revisor de que la evidencia en la cual se sustentó la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe identificar otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[2] *Misión Ind. PR v. JP*, supra, pág. 132.

A pesar de que lo hasta aquí expuesto ha sido la pauta en la revisión de decisiones administrativas, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025) nuestro Tribunal Supremo acogió los fundamentos aportados en *Loper Bright Enterprises et al., v. Raimondo*, 603 US 369 (2024), 144 S.Ct. 2444, que cuestionaban, en lo esencial, buena parte de la referida pauta. En lo específico, nuestro Tribunal Supremo marcó los límites a la deferencia que debemos concederle a las determinaciones de las agencias administrativas, haciendo la siguiente expresión:

> ...concluimos que **la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales.** Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra*. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.** No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Íd.* (Énfasis provisto).

b.

La Constitución del Estado Libre Asociado reconoce como derecho fundamental del ser humano el derecho a la vida, la libertad y el disfrute de la propiedad. Art. II, Sec. 7, Constitución del Estado Libre Asociado, 1 LPRA sec. 7. En consecuencia, también dispone que ninguna persona será privada

---

[2] Somos del criterio de que las expresiones vertidas en *Misión Ind. PR v. JP*, supra, sobre las determinaciones de derecho quedaron sin efecto tras la reciente opinión *Vázquez v. Consejo de Titulares*, 2025 TSPR 56.

de su libertad o propiedad sin un debido proceso de ley. Const. ELA, *supra.* Similar reconocimiento se encuentra en las Enmiendas V y XIV de la Constitución de Estados Unidos.

Aunque en el ámbito del derecho administrativo el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, sí hay que garantizarle a las partes aquellos derechos establecidos en la LPAU, *supra. Baez Díaz v. ELA,* 179 DPR 605, 624 (2010). Esto se debe a que dentro de su función adjudicativa las agencias administrativas han de interferir con los intereses de libertad y propiedad de los individuos. *Almonte et al. v. Brito,* 156 DPR 475, 481 (2002). En específico, en la Sec. 3.1 de la LPAU, 3 LPRA. sec. 9641, la Asamblea Legislativa extendió a los procedimientos adjudicativos formales ante las agencias las siguientes garantías mínimas del debido proceso de ley en su vertiente procesal: (a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (b) derecho a presentar evidencia; (c) derecho a una adjudicación imparcial, y; (d) derecho a que la decisión sea basada en el expediente. El Tribunal Supremo ha establecido que cualquier determinación de una agencia que se haga en contravención de estas pautas mínimas no puede prevalecer. *San Gerónimo Caribe Project v. ARPe,* 174 DPR 640, 660 (2008).

c.

La Ley Núm. 161 del 1 de diciembre de 2009, según enmendada, conocida como Ley para la Reforma del Proceso de Permisos de Puerto Rico, (Ley Núm. 161-2009), 23 LPRA sec. 9011 *et seq.,* fue aprobada a los fines de establecer el marco legal y administrativo que rigen los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. Exposición de Motivos de la Ley Núm. 161-2009, *Íd.; Horizon v. Jta. Revisora, RA Holdings,* 191 DPR 228, 236 (2014).

En lo pertinente a las facultades de fiscalización de la JP, el Artículo 14.4 de la Ley Núm. 161-2009, 23 LPRA sec. 9024c, dispone lo siguiente:

La Junta de Planificación fiscalizará el cumplimiento de las determinaciones finales y los permisos otorgados por la Oficina de Gerencia de Permisos, Municipios Autónomos con Jerarquía de la I a la V o el Profesional Autorizado, al amparo de esta Ley. Cualquier incumplimiento detectado por la Junta de Planificación, a través del proceso de auditoría, así como por una Entidad Gubernamental Concernida en cuanto a una determinación final o un permiso otorgado conforme a las disposiciones de la Ley 161-2009, deberá ser investigado y en caso de resultar en una violación a la Ley o reglamento, se procederá como en esta Ley se dispone.

a) El Director de la División de Auditorías y Querellas de la Junta de Planificación será el Oficial Auditor de Permisos, cuyos propósitos principales serán la realización de auditorías de las determinaciones finales, independientemente de cuál haya sido el ente adjudicador; **la fiscalización *motu proprio* de obras o usos llevados a cabo sin las autorizaciones pertinentes y la evaluación y adjudicación de querellas presentadas al amparo de la Ley 161-2009,** Ley 75 de 24 de junio de 1975, según enmendada, o el Reglamento Conjunto. (Énfasis provisto).

Por su parte, del Artículo 14.11 de la Ley Núm. 161-2009, 23 LPRA sec. 9024j se desprende que la JP tiene facultad para adjudicar querellas *motu proprio*. A continuación, se expone el texto íntegro del referido Artículo:

La Junta de Planificación, evaluará el cumplimiento de los Profesionales Autorizados, Inspectores Autorizados y de los Profesionales Licenciados con las disposiciones de esta Ley, en relación con permisos, licencias o certificaciones expedidas al amparo de esta o cualquier otra Ley y reglamento aplicable. A tales fines, **adjudicará querellas iniciadas *motu proprio*, como resultado de una auditoría, o a petición de cualquier individuo.** Además, impondrá multas, según se establezca en el Reglamento Conjunto de Permisos, disponiéndose que bajo ningún concepto se puedan utilizar dichas multas o querellas para realizar ataques colaterales a determinaciones finales y a los permisos que debieron haber sido presentados oportunamente, de conformidad con las demás disposiciones de esta Ley. *Íd.* (Énfasis provisto).

Además, el Artículo 14.7 de la Ley Núm. 161-2009, 23 LPRA sec. 9024f, reconoce en qué momento o bajo qué circunstancia la JP está facultada para archivar una querella. Al respecto, expone lo que sigue:

La Junta de Planificación, así como el Municipio Autónomo con Jerarquía de la I a la V o la Entidad Gubernamental Concernida, según corresponda, iniciará la investigación de los hechos alegados en toda querella dentro del término de treinta (30) días naturales, contados desde la presentación de la misma a través del Sistema Unificado de Información y notificará al querellante, dentro de dicho término, sobre las gestiones realizadas. Dentro del término de sesenta (60) días naturales desde su presentación la Junta de Planificación, los Municipios Autónomos con Jerarquía de la I a la V o la Entidad Gubernamental Concernida, emitirá sus hallazgos o recomendaciones sobre la querella y procederá, de entenderlo necesario, conforme a lo dispuesto en esta Ley.
**La Junta de Planificación [...] ordenará el archivo de la querella presentada, cuando determine que no hubo incumplimiento o violación a las disposiciones legales aplicables.**

Una parte adversamente afectada por esta determinación de archivo podrá presentar una reconsideración de la misma siguiendo el procedimiento establecido en la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme".[3] *Íd.* (Énfasis provisto).

Por último, el Artículo 14.13 de la Ley Núm. 161-2009, 23 LPRA sec. 90241 regula lo concerniente a la imposición de multas cuando se infrinjan las disposiciones del propio estatuto. Al respecto, el referido Artículo dispone que:

La Junta de Planificación o los Municipios Autónomos con Jerarquía de la I a la V tienen la facultad de expedir multas administrativas a cualquier persona, natural o jurídica, que: (a) Infrinja esta Ley, la Ley Núm. 75 del 24 de junio de 1975, según enmendada, conocida como "Ley Orgánica de la Junta de Planificación", el Reglamento Conjunto, los permisos o las condiciones de los permisos expedidos al amparo de la misma, los Reglamentos de Planificación o cualquier otra ley aplicable. Las multas administrativas no excederán de cincuenta mil (50,000) dólares por cada infracción, entendiéndose que cada día que subsista la infracción se considerará como una violación independiente. *Íd.*

En armonía con lo anterior, el Capítulo 11.4 del Reglamento Conjunto de 2023, *supra*, rige lo concerniente a la imposición de multas administrativas. En lo pertinente, el inciso (a) de la Sección 11.4.1.1 de la Regla 11.4.1 del Reglamento Conjunto de 2023, *supra*, dispone que, si de la investigación realizada se concluye que las alegaciones de la querella son ciertas, la Junta de Planificación procederá a expedir una multa administrativa que no exceda de $50,000.00 por cada infracción. Por su parte, el inciso (e) de la Regla expone que las multas constituirán un gravamen real sobre el título de la propiedad involucrada en la violación o violaciones.

**III. Aplicación a los hechos**

a.

Según quedó visto, la parte recurrente señala tres errores, que juzgamos susceptibles de discusión conjunta, y así procederemos. En el primer y segundo error, se sostiene que la JP incidió: al basar su *Resolución*

---

[3] Derogada y sustituida por la Ley 38-2017.

*de Archivo* en alegaciones traídas por primera vez en una moción de reconsideración, a pesar de que tales nuevas alegaciones contradecían una admisión previa del recurrido respecto a que el predio le pertenecía a la Asociación. Sobre lo mismo, sostiene que tal proceder de la JP le violentó su debido proceso de ley, al quebrantar el derecho a la confrontación.

Por su parte, la JP arguye que, mediante la querella presentada, la parte recurrente pretendía que dicha agencia administrativa se convirtiera en la entidad que adjudicara una controversia sobre la titularidad de un predio, a pesar de no ser el foro con jurisdicción para ello. La parte recurrida reproduce este argumento en su oposición al recurso de revisión judicial, y, añade, que la controversia que se llevó a la atención de la JP surgía del propio expediente administrativo, y las alegaciones incluidas en la querella imputaban construcción en *suelo ajeno*.

Adelantamos que: 1) la Asociación no tiene razón al afirmar que la JP poseía jurisdicción para adjudicar una controversia de colindancias; 2) la JP incidió al archivar la querella por presunta falta de jurisdicción para examinar el permiso cuestionado. Veamos.

b.

La postura reiterada de la Asociación ha sido a los efectos de que el jacuzzi que dio lugar a la presentación de la querella ante la JP fue construido en *terreno ajeno*. De esta manera, la parte recurrente aduce ante nosotros que el terreno donde los recurridos construyeron el jacuzzi pertenece a la Asociación. Cónsono con ello, en la propia *Solicitud de radicación de querellas*, instada por los aquí recurrentes, identificada con el alfanumérico 2023-SRQ-300199, se alegó que: 1. el titular construyó en **terreno ajeno** perteneciente a la Asociación de Residentes de Sabanera del Río en Gurabo, PR; y; 2. **el permiso concedido, si alguno, no permite construcciones en terreno**

**ajeno**[4]. (Énfasis provisto). Nótese que las alegaciones colocan la controversia a ser dirimida por la JP sobre si se la parte recurrida construyó un jacuzzi **en terreno ajeno**, presuntamente, propiedad de la Asociación. En este sentido, coincidimos con la JP al apreciar que las referidas alegaciones contienen, esencialmente, un cuestionamiento sobre derechos propietarios o de colindancia, que no le correspondía dilucidar.

De esto último se sigue, además, que, antes de que la parte recurrida presentara su *Moción de Reconsideración*, arguyendo sobre la falta de jurisdicción de la JP para considerar una controversia sobre construcción en terreno ajeno, las propias alegaciones contenidas en la *Solicitud de radicación de querellas* ya identificaban tal asunto como central. Ante esto, la JP estaba perfectamente habilitada de auscultar *motu proprio* su jurisdicción para dirimir un asunto de colindancias, desde la presentación de la *Solicitud de radicación de querellas*.

En la oración que precede mencionamos a la *Moción de Reconsideración* instada por la parte recurrida ante la JP, pues la parte recurrente arguye que dicha agencia administrativa no podía admitirla, al contener materias que no formaron parte del proceso administrativo adjudicado. Sobre ello, cabe reconocer que la jurisprudencia ha sido enfática en que las partes tienen la obligación de presentar toda la evidencia pertinente ante la agencia en la etapa inicial del procedimiento administrativo. En consecuencia, si una parte no presenta cuestiones o evidencia disponible en esa etapa, se considera que ha renunciado a su derecho de presentarlas posteriormente. Este principio está cimentado en las doctrinas de jurisdicción primaria y agotamiento de remedios administrativos, que limitan la revisión judicial a las cuestiones y pruebas que fueron planteadas ante la agencia. Permitir la presentación de evidencia nueva en la etapa de reconsideración o en la revisión judicial podría

---

[4] Apéndice del recurso de revisión judicial, pág. 2.

usurpar la función adjudicativa de la agencia y contravenir estos principios. Véase, *Pereira Suarez v. Jta. Dir. Cond.*, 182 DPR 485, 510-511 (2011).

Sin embargo, tal cual advertimos, con tan solo evaluar **la faz de la querella** instada ante la JP, resultaba suficiente para justificar que, en cualquier momento procesal, dicha agencia auscultara su propia jurisdicción para dilucidar la controversia de colindancias. De aquí que no encontremos que la *Resolución en Archivo* descansara exclusivamente en prueba presentada en etapa de reconsideración, como sugiere la parte recurrente, sino que del expediente surgía base razonable para que la JP auscultara su propia jurisdicción.[5] En este contexto, las alegadas *admisiones* que hiciera la parte recurrida acerca del área donde construyó el jacuzzi, podría ser materia más bien de un pleito civil, antes que del proceso administrativo bajo la JP.

En definitiva, la JP carecía de jurisdicción *para abordar la controversia concerniente a la titularidad del predio*, pues dicha facultad no le fue delegada por ley.

Sin embargo, el análisis efectuado por la JP, sobre la información contenida en su expediente administrativo acerca de la querella presentada, no debió concluir con lo anterior. En cuanto a esto, en su tercer señalamiento de error, la Asociación esgrime que la JP se equivocó al archivar la querella, pues auscultar **la existencia o no de un permiso** para la finca donde ubica

---

[5] Resaltamos que en la *Resolución de Archivo* la JP hizo las siguientes determinaciones de hechos:

1. El pasado 14 de diciembre de 2023, se presentó una solicitud de querella en el *Single Business Portal* ("SBP"), a la cual se le asignó el número **2023-SRQ-300199**, alegando lo siguiente: 1. El titular construyó en terreno ajeno perteneciente a la Asociación de Residentes de Sabanera del Rio. 2. El permiso concedido, si alguno, no permite construcciones en terreno ajeno.

2. La autoridad de la Junta de Planificación está limitada a las facultades que las disposiciones de ley le otorgan.

3. Luego de haber examinado los alegatos en la querella 2023-SRQ-300199, no se encontró evidencia que este organismo tenga jurisdicción sobre ese asunto.

4. La Junta de Planificación no puede proveer el remedio solicitado por el querellante porque este no imputa violación de leyes ni reglamentos, ni ausencia, ni incumplimiento con las condiciones de un permiso bajo nuestra competencia, resultando en una acción *ultra vires*.

Como se podrá notar, la JP no mencionó prueba documental que no fuera el contenido de la faz de la querella.

la construcción en controversia, se encontraba dentro de los asuntos para los cuales sí posee jurisdicción. Tiene razón.

Al decir lo anterior sopesamos que, en el *Informe de Investigación* del 26 de febrero de 2024, suscrito por la Inspectora Neyssa Y. Rivera Pérez cuando investigó las alegaciones de la querella 2023-SRQ-300199, quedó plasmado que, "[e]l querellado tiene permiso de construcción de la ampliación que realizó en la propiedad el cual está anejado a este informe, sin embargo[,] est[á] dispuesto a enmendar el mismo de ser necesario".[6] El propio expediente administrativo da cuentas de que, el referido permiso de construcción fue expedido el 17 de diciembre de 2014, con el núm. 2014-293046-PCO-31258, para la ampliación de la residencia del señor Torres Peña. Al revisar dicho permiso surge que, entre las construcciones permitidas se encuentra un baño y el área bruta de construcción total es de 260.0 pies cuadrados, pero no menciona el jacuzzi aludido, cuyo permiso se cuestiona.

En armonía con lo indicado, del *Memorial Explicativo* también contenido en el expediente, se desprende que "[e]l proyecto a construir consta de la construcción [sic] de un baño para el cuarto m[á]ster y a la misma vez un pasillo conector entre la residencia y la marquesina. Esta Ampliación equivale a 260 pies cuadrados". De aquí que, a pesar de que la parte recurrida tiene un permiso de construcción: no aparentaría que resulte insuficiente para entender como legalizado el jacuzzi que fue construido en la residencia, independientemente de cuánto se proyecte hacia la porción de terreno en controversia; como tampoco se ha acreditado la existencia de otro permiso de construcción o alguna enmienda que incluya dicha obra.

Al observar lo anterior, no asombra que en la *Moción de Reconsideración*, la parte recurrente alegara que "[s]urge del r[é]cord, que la propia Junta de Planificación por conducto de la Sra. Neyssa Y. Rivera, **tomó conocimiento que la parte Querellada notificó que se encuentra en el**

---

[6] Apéndice del recurso de revisión judicial, pág. 43.

**trámite de obtención de permiso/legalización de la obra de construcción"**. (Énfasis provisto). Incluso, la propia JP, el 30 de diciembre de 2024, emitió una *Resolución* donde manifestó que el 20 de noviembre de 2024 había recibido una comunicación de parte de la parte recurrida **quien le indicó que se encontraba tramitando los permisos para poder legalizar la construcción.**

Lo anterior no constituye una adjudicación por este foro revisor de la legalidad del referido permiso, sino que lo exponemos para establecer que, distinto a lo afirmado por la JP, no observamos impedimento legal alguno para que asumiera jurisdicción sobre una causa de acción al amparo de la Ley Núm. 161-2009, *supra*, especialmente su Art. 14.5, *supra*. Es de ver que por virtud de su ley habilitadora la JP estaba habilitada para considerar la legalidad del referido permiso *motu proprio*, en tanto el tema surgía del expediente ante sí, y aun cuando no hubiese sido solicitado expresamente por la Asociación.

Atado a lo anterior, también tiene razón la Asociación al identificar y resaltar que el permiso de construcción es de naturaleza *in rem*, Art. 9.6 Ley Núm. 161-2009, 23 LPRA sec. 9019e, por lo que, **sin perjuicio de quién sea el titular del predio en controversia**, no aparenta que en el expediente se encuentre un permiso de construcción expedido para dicha obra en particular.

Aunque reiteremos, ubica dentro de las facultades de fiscalización reconocidas a la JP el que examine *motu proprio* las obras o usos llevados a cabo sin las autorizaciones pertinentes, y la evaluación y adjudicación de querellas presentadas al amparo de la Ley Núm.161-2009, Ley 75 de 24 de junio de 1975, según enmendada, o el Reglamento Conjunto de 2023. Artículo 14.4 de la Ley Núm. 161-2009, *supra*. También se reconocen facultades a dicha agencia, según estatuidas en la Ley Núm. 161-2009, *supra*, el adjudicar querellas iniciadas *motu proprio*, como resultado de una auditoría, o a

petición de cualquier individuo. Artículo 14.11 de la Ley Núm. 161-2009, *supra.* Incluso, dicho estatuto, en su Art. 14.13, *supra,* dispone expresamente que la JP tiene la facultad de expedir multas administrativas a cualquier persona, natural o jurídica, que infrinja la Ley Núm. 161-2009, *supra.* Por su parte, el Art. 14.7 de la Ley Núm. 161-2009, *supra,* dispone que la Junta ordenará el archivo de la querella **cuando determine que no hubo** incumplimiento o violación a las disposiciones legales aplicables. En este caso no medio una determinación de la JP respecto al incumplimiento de las disposiciones legales aplicables, en tanto juzgó que no tenía jurisdicción para atender la controversia planteada.

En definitiva, aunque la JP no tenga autoridad para dirimir conflictos relacionados con los límites de las propiedades, según afirmó en la *Resolución* recurrida, si está facultada por ley para examinar si acontecieron violaciones al permiso bajo discusión y conceder los remedios adecuados.

## IV. Parte dispositiva

Por los fundamentos que anteceden, que hacemos formar parte de esta sección dispositiva, *Revocamos* la Resolución de Archivo. En atención a ello, ordenamos la devolución del caso a la agencia concernida para que evalúe los asuntos atinentes al permiso cuestionado.

Lo acordó y manda el Tribunal y lo certifica su Secretaria. La jueza Santiago Calderón emitió un voto de conformidad y disidente (en parte).

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| JUNTA DE PLANIFICACIÓN, ADMINISTRACIÓN SABANERA DEL RÍO<br>Recurrente<br><br>v.<br><br>JOSÉ RAMÓN TORRES PEÑA, MIGDALIA MARRERO<br>Recurrida | KLRA202500203 | *Revisión Judicial* procedente de la Junta de Planificación de Puerto Rico<br><br>*Núm. de Querella: 2023-SRQ-300199* |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

### VOTO DE CONFORMIDAD Y DISIDENTE (en parte) DE LA JUEZA SANTIAGO CALDERÓN

En San Juan, Puerto Rico, a __8__ de septiembre de 2025.



Muy respetosamente disiento de la determinación tomada por la mayoría del Panel. Soy de la opinión que, la totalidad de la *Resolución de Archivo* emitida por la Junta de Planificación (JP) es correcta en derecho. Al analizar la Sentencia emitida por la mayoría de este panel, ciertamente coincido con la determinación que *[e]n definitiva, la JP carecía de jurisdicción para abordar la controversia concerniente a la titularidad del predio, pues dicha facultad no le fue delegada por ley.* No obstante, disiento en cuanto a concluir que la JP *si está facultada por ley para examinar si acontecieron violaciones al permiso bajo discusión y conceder los remedios adecuados y ordenar la devolución del caso a la agencia concernida para que evalúe los asuntos atinentes al permiso cuestionado,* entiéndase evaluar el alegado permiso –o la carencia de este- de la construcción en terreno ajeno.

Fíjese que, la Asociación de Residentes de Sabanera del Río Inc. (parte recurrente o Asociación) presenta una querella ante la JP y alega que: 1. El titular construyó en terreno ajeno perteneciente a la Asociación de Residentes de Sabanera del Río 2. El permiso concedido, si alguno, no permite construcciones en terreno ajeno. Ante ese petitorio, la JP inicialmente atendió la querella, asigna una investigadora, la cual rinde un informe y,

posteriormente, la JP emite una Notificación de Hallazgo(s) y Orden de Mostrar Causa. Subsiguientemente, la JP reconoce que su actuación fue *ultra vires* y ordena el archivo de la querella porque no encuentra evidencia que le faculte para intervenir sobre las controversias que se esbozan en la querella.

Indubitablemente coincido con la mayoría de este panel en cuanto a que la Ley Núm. 161-2009 según enmendada, no le concede a la JP la intervención para adjudicar la controversia ante su consideración. Sin embargo, disiento en la parte que este Foro Intermedio le ordena a la JP que determine sobre la legalidad del permiso, cuando en realidad el petitorio de la Asociación debe ser atendido bajo los preceptos del Código Civil 2020, -al igual que el Código Civil 1930- el cual concede los remedios adecuados en los casos de haber construido en terreno ajeno, y le corresponde al Tribunal de Primera Instancia (TPI) determinar si fue un edificante de buena o mala fe[1]. Desde mi perspectiva, el asunto del permiso es inconsecuente, porque al carecer la JP de autoridad o jurisdicción para atender y conceder remedios, tampoco tiene autoridad en ley para atender sobre un permiso que es totalmente irrelevante a la controversia jurídica, la cual tiene que ser adjudicada por el TPI.

Ante ello, hubiese confirmado la totalidad de la *Resolución de Archivo* aquí recurrida.

Grisel M. Santiago Calderón
Jueza de Apelaciones

---

[1] 31 LPRA secc. 7981, 7987, 7989, 7990, *et. seq.*